UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
(CHATTANOOGA COURTHOUSE)

| | | |
|---|---|---|
| DONALD DOORNBOS, FRED BAILEY and ELIZABETH BLAND, individually and on behalf of others similarly situated, | § § § § § | |
| Plaintiffs, | § § | Case No. 3:05-CV-00428 |
| v. | § § § | Judge: Hon. Harry S. Mattice, Jr Magistrate: William B. Mitchell Carter |
| PILOT TRAVEL CENTERS LLC, a foreign corporation, PILOT CORPORATION, dba Haslam Oil Company, a foreign corporation, and DOES 1 – 20, inclusive, | § § § § § § § | |
| Defendants. | § | |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND BRIEF IN SUPPORT**

Comes now Plaintiffs, by and through their undersigned counsel of record, and request that the Court preliminarily approve the settlement reached by the parties in this matter. In support thereof, Plaintiffs state as follows:

**I. Introduction**

This Fair Labor Standards Act (FLSA) overtime action claims that Defendants failed to pay overtime to salaried managers working at their truck stops and attached restaurants outside of California. The parties have agreed to settle this action as it pertains to Opt In Plaintiffs who were travel center co-managers or restaurant co-managers outside of California[1] (hereinafter "Opt In Plaintiffs'). Plaintiffs request preliminary approval by the Court of this settlement so that notice can be sent to the Opt In Plaintiffs with claim forms.

---

[1] The Court previously granted Defendants motions for summary judgment with respect to Travel Center General Managers and Restaurant General Managers and dismissed their claims with prejudice.

1

The parties propose to settle the remaining claims of this litigation for four million two hundred fifty thousand dollars ($4,250,000.00). According to current calculations, which will be revised through the claims process as described below, Opt In Plaintiffs will receive at least one-hundred and five dollars ($105.00) for each week they worked as a salaried co-manager during the time period applicable to this litigation for each Opt In Plaintiff.

The parties have agreed upon a two-step process for the settlement of this opt in class action in which the Court needs to first review and approved the negotiated settlement of the parties at the preliminary approval step so that notice can be sent to the class members. Once notice has been sent and the class members have had opportunity to submit claims, object to the settlement, and otherwise comment on the proposed settlement, a final approval hearing will be necessary for final approval of the settlement and dismissal of the case.

## II. Requested Two-Step Approval Process

This is not a Rule 23 opt out class action. This is an FLSA opt in class action and the universe of plaintiffs in this matter is limited to those individuals who timely opted into this lawsuit and who have not been dismissed during the court of this lawsuit. Because this is not a Rule 23 class action, the Court and the parties are in the position of immediately approving the negotiated settlement of the parties and dismissing this case. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)("When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.")

However, because this is a nationwide opt-in class action, and out of an abundance of caution and for added transparency, the parties have negotiated into the settlement a two-step process for the resolution of this matter. The first step, which this motion requests, is the

preliminary approval by the Court of the parties' attached Settlement Agreement, Notice Form, and Claim Form. After preliminary approval by the Court, the parties will use an independent third-party claims administrator to send notices and claim forms to the Opt In Plaintiffs. After the notice and claim period has run, the parties will move for a final approval of the settlement in this case and will move for dismissal of this action.

### III. The Proposed Settlement

Attached hereto as Exhibit 1 is the Joint Stipulation of Settlement and Release between the parties. Attached as Exhibits A and B to Exhibit 1 are the parties agreed Notice and Claim form.

Under the Settlement, the parties have agreed to settle all claims for four million two hundred fifty thousand dollars ($4,250,000.00). Out of this Gross Settlement amount, the parties have agreed to pay the attorneys' fees of Plaintiffs' counsel, costs of Plaintiff's counsel, and costs of the third-party administrator of the settlement. After these agreed items, the remaining sum of money, the Net Settlement, will be divided among the class members according to how many workweeks each individual worked.

At this time, Plaintiff's counsel estimates that the Net Settlement amount will be approximately $2,693,333. The third-party administrator will divide the Net Settlement amount among the opt in plaintiffs based upon data currently available to the parties and upon responses gathered through the claims process. At this time, Plaintiffs' counsel estimates that each Plaintiff will receive approximately $105.00 per workweek during the applicable time period for each individual. This means that if an Opt In Plaintiff worked ten (10) workweeks during the time period, they would be entitled to at least $1,050. If an Opt In Plaintiff worked four hundred (400) workweeks during the time period, they would be entitled to at least $42,000. Therefore,

the longer an individual worked at Defendants during the time period covered by this lawsuit, the more they will obtain through the settlement. The parties have also stipulated how the payments are to be made and how they are to be allocated for tax purposes.

This is a no-reversion settlement. This means that if Opt In Plaintiffs cannot be found, or do not complete claim forms and sign releases, the money of those individuals will not go back to Defendants, but will instead remain in the Net Settlement amount for division among the Opt In Plaintiffs who properly complete the claim forms and releases. The estimated[2] $105 per workweek is the lowest these individuals will receive. The workweek amount will *increase* if there are individuals who cannot be found or who do not complete claim forms.

### A. The Settlement is Fair and Reasonable

This litigation has been heavily contested by both parties throughout its long history. Plaintiffs feel they are entitled to overtime under the FLSA and Defendants strongly dispute that argument and do not admit any wrongdoing. The parties conducted copious amounts of discovery in this matter by taking depositions of more than 40 individuals and by exchanging thousands of documents. Defendants moved for summary judgment as to all of Plaintiffs' claims and Defendants were able to secure the dismissal of the Travel Center General Managers and the Restaurant General Managers. This matter, if not settled, was set for trial in the near future and both Plaintiffs and Defendants faced significant risks at trial. As with any settlement, this settlement is a compromise by both parties. By reaching an agreement, the parties have done away with the uncertainty and risk of trial.

This settlement secures an overtime payment of approximately $105 for every workweek of overtime worked by each Opt In Plaintiff. The Opt In Plaintiffs in this matter each were paid a salary during their employment with Defendants. At trial, Defendants were prepared to argue

---

[2] The third party administrator will run the calculations of what each individual shall receive.

4

that the salary paid to the Opt In Plaintiffs was done so under an agreement that the salary also covered all overtime hours for each individual. If this argument was persuasive to the Court, Plaintiffs could have potentially recovered no damages. At trial, Plaintiffs were prepared to argue that the agreed salary was only intended to cover the first forty hours of regular time worked each week, and that any hours over forty were subject to time-and-a-half overtime. A secondary position of Opt In Plaintiffs was that the salary covered forty hours per week, and that half time was owed for any hours over forty and below fifty, and that time-and-a-half was owed on any hours over that. Under each of these scenarios (those argued by both Defendants and Plaintiffs), the potential damages of this matter differed by huge amounts. Therefore, both parties in this litigation faced the risk of being extremely unhappy with the result of trial. Given these risks, the Settlement secures a significant and meaningful recovery for each Plaintiff.

### B. The Experience of Class Counsel and Defense Counsel

The Settlement of this litigation was negotiated through a neutral mediator and through the parties' respective counsel. This has been an arms length negotiation conducted by experienced class action attorneys. Counsel for Plaintiffs during the negotiation of this matter included, Hal K. Gillespie, Joseph H. Gillespie, and Charles A. Jones. Attached hereto as Exhibit 2 is a current web bio of Hal K. Gillespie and Joseph H. Gillespie. Hal Gillespie is a founding shareholder of Gillespie, Rozen, & Watsky P.C., a firm that specializes in labor and employment litigation on behalf of Plaintiffs. Joseph Gillespie is also a shareholder of the Gillespie, Rozen & Watsky firm and he conducted the bulk of the discovery over the past three years of this litigation and was the lead attorney for Plaintiffs on the efforts to respond to Defendants motions for summary judgment. Charles A. Jones is a shareholder of the firm of McInerney & Jones and he has been involved in this litigation from its inception on behalf of

5

Plaintiffs, and he personally conducted the depositions of several of the Defendants' witnesses in this matter. Mr. Jones specializes in class action and collective actions such as this matter and Mr. Jones handled the majority of this litigation on behalf of the Plaintiffs during the California phase of this litigation. Defendants were represented by Jody A. Landry of the firm Littler Mendelson P.C. A true and correct copy of Ms. Landry's current web bio is attached hereto as Exhibit 3. Ms. Landry has been the lead attorney for Defendants on this matter for the past several years and is highly experienced and skilled in FLSA matters as well as other labor and employment matters. Because of the experience and skill of counsel for both parties, this matter was mutually resolved in a manner that is fair and reasonable and that should be approved by this Court.

### C. Plaintiffs' Attorneys' Fees and Costs are Reasonable

Under the Settlement, the parties have agreed that Plaintiffs' attorneys may be awarded 33 and 1/3% of the Gross Settlement Amount. This amounts to One Million, Four Hundred and Sixteen Thousand, and Six Hundred and Sixty Seven Dollars ($1,416,667.00). In FLSA class actions such as this one, it is standard for plaintiffs' attorneys to handle the entire litigation on a contingency basis and that is how this matter has been handled. Plaintiffs were represented in this matter by more than nine attorneys in two firms. If requested, Plaintiffs' counsel is prepared to provide a more detailed statement to the Court regarding the hours expended by counsel in this matter. Under either a lodestar or contingency analysis, the attorneys' fees of Plaintiffs in this matter are fair and reasonable.

Under the Settlement, the parties have agreed to pay up to $100,000 to Plaintiffs' attorneys to recover costs expended in this matter. Plaintiffs' counsel are currently itemizing their costs and it is likely that this amount will go *down* by the time Plaintiffs' seek final approval of the

6

Settlement of this matter. Any amount of costs that is not sought by Plaintiffs, will revert to the Net Settlement amount for distribution among the Plaintiffs as described in the Settlement.

Under the Settlement, the parties have chosen a third-party claims administrator. Plaintiffs' counsel has obtained an estimation for the Claims Administrator's services and it is estimated that the Claims Administrator will costs approximately $40,000. This is a high estimate and it is likely to go down. If the actual amount required for payment to the Claims Administrator goes down, the remaining funds will revert to the Net Settlement amount for distribution to the Plaintiffs as described in the Settlement.

**IV.     Actions Requested as Part of This Motion for Preliminary Approval**

Wherefore, Plaintiffs request that the Court undertake the following actions:

1) Review the parties' Settlement (Exhibit 1 to this motion);

2) Review the parties' proposed Notice Form (Exhibit 1(A) to this motion);

3) Review the parties' proposed Claim Form (Exhibit 1(B) to this motion);

4) Preliminarily approve the parties' settlement, proposed notice form, and proposed claim form and direct that the notice and claim forms be provided to the Plaintiffs as proposed in the Settlement; and

5) Set a time and hearing for the final review of the Settlement in approximately 75 days from the entry of an order preliminarily approving the Settlement.

Dated: October 27, 2009

> By: /s/ Joseph H. Gillespie
> Joseph H. Gillespie (admitted *pro hac vice*)
> Hal K. Gillespie (admitted *pro hac vice*)
> GILLESPIE, ROZEN, WATSKY P.C.
> 3402 Oak Grove Avenue, Suite 200
> Dallas, TX 75204
> Telephone: (214) 720-2009
> Facsimile: (214) 720-2291
>
> KELLY McINERNEY, ESQ.
> CHARLES A. JONES, ESQ.
> McINERNEY & JONES
> (admitted *pro hac vice*)
> 18124 Wedge Parkway, Suite 503
> Reno, NV 89511

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 27, 2009 the above and foregoing was served upon all counsel of record via the Court's ECF notice system.

> /s/ Joseph H. Gillespie
> Joseph H. Gillespie